```
                                                        ____ FILED        ____ ENTERED
                                                        ____ LOGGED       ____ RECEIVED
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAN 0 9 2024

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | Criminal No. BAH 24cr 4 |
| | * | |
| v. | * | (Conspiracy to Commit Mail Fraud, |
| | * | 18 U.S.C. § 1349; Mail Fraud, 18 |
| | * | U.S.C. 1341; and |
| DWAYNE HENRY, and | * | Forfeiture, 18 U.S.C. §§ |
| WAYNE ANTHONY HENRY, | * | 981(a)(1)(C), 982; 21 U.S.C. § 853(p), |
| | * | 28 U.S.C. § 2461(c)) |
| Defendants | * | |
| | * | UNDER SEAL |

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ CB _____ DEPUTY

## INDICTMENT

### COUNT ONE

**(Conspiracy to Commit Mail Fraud)**

The Grand Jury for the District of Maryland charges that:

### Introduction

At times relevant to this Indictment:

1. Defendant DWAYNE HENRY ("**DWAYNE**") was a resident of Landover Hills, Maryland.

2. Defendant WAYNE ANTHONY HENRY ("**WAYNE**") was a resident of Landover Hills, Maryland and **DWAYNE**'s brother.

3. The individuals with the initials A.K., J.S., J.P., and J.M. were real persons living in Baltimore County, Maryland, Alaska, Oregon, and North Carolina, respectively.

4. PayPal Holdings Inc. ("PayPal") and Zelle Company ("Zelle") provided an online payment system and digital payments network, respectively.

5. FedEx Corporation ("FedEx"), the United Parcel Service ("UPS"), and the United States Postal Service ("USPS"), provided shipping and postal services in the United States.

6. Walgreens Drugstore Corporation ("Walgreens") and Staples Inc. ("Staples") were a pharmacy chain and an office supply retail chain, respectively. Walgreens provided FedEx pickup service and Staples provided shipping services in coordination with UPS.

7. Comcast Corporation ("Comcast") was an American multinational telecommunications company.

8. Truist Bank ("Truist") and M&T Bank ("M&T") were financial institutions as defined in 18 U.S.C. § 20.

**Relevant Terms**

9. A "lottery scheme" typically involves contacting the victim by mail, electronic mail, or telephone, and causing the victim to believe that he or she has won a large cash prize through a lottery or sweepstakes. To collect the purported winnings, the victim must pay taxes or other fees in advance, through various payment methods including wire transfer, gift cards, or sending cash in the mail. Many lottery or sweepstakes schemes originate outside of the United States. The individuals who purportedly win the lotteries or sweepstakes do not receive their winnings, but lose their advance fees or tax payments.

10. An "IP address" was an internet protocol address, or identifying number associated with a specific computer or computer network. When connected to the internet, the IP address allowed a computer to send or receive information. The IP address could be used to identify the physical location of the computer user.

**The Scheme and Artifice to Defraud**

11. From in or about October 2020 until in or about December 2023, in the District of Maryland, and elsewhere, **DWAYNE, WAYNE**, and other persons known and unknown to the Grand Jury, knowingly devised and intended to devise a scheme and artifice to defraud and to

2

obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, that is, through the fraudulent operation of a lottery scheme (hereinafter, "the scheme to defraud").

### The Conspiracy to Execute the Scheme to Defraud

12. From in or about October 2020 until in or about December 2023, in the District of Maryland and elsewhere,

**DWAYNE HENRY, and
WAYNE HENRY,**

the defendants herein, did knowingly and willfully conspire, combine, confederate, and agree with each other, and other persons known and unknown to the Grand Jury ("conspirators"), to commit mail fraud, that is, to knowingly execute and attempt to execute the scheme to defraud and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly use and cause to be used the United States mail, in violation of Title 18, United States Code, Section 1341 (hereinafter, "the conspiracy to defraud").

### Objects of the Conspiracy and Scheme to Defraud

13. The object of the conspiracy and scheme to defraud was to defraud victims of their money and property by materially false and fraudulent pretenses, representations and promises.

### Manner and Means of the Conspiracy and Scheme to Defraud

14. It was part of the conspiracy and scheme to defraud that conspirators contacted victims by mail and over the phone with the intent to fraudulently induce the victims to provide money and property.

15. It was further part of the conspiracy and scheme to defraud that conspirators caused victims to believe that they had won a lottery or sweepstakes and were required to send payment in advance for taxes and other fees before the victims could be entitled to receive their winnings.

16. It was further part of the conspiracy and scheme to defraud that **DWAYNE**, **WAYNE**, and other conspirators caused the victims to send payment for purported taxes and other fees through wire transfer, by gift card, by sending cash, and by other payment methods.

17. It was further part of the conspiracy and scheme to defraud that from approximately 2022 through approximately 2023, **DWAYNE** sent packages and suitcases to victims throughout the United States from the Staples store on Annapolis Road in Lanham, Maryland.

18. It was further part of the conspiracy and scheme to defraud that **DWAYNE** used a fictitious name and false address when mailing and attempting to mail items via UPS.

19. It was further part of the conspiracy and scheme to defraud that **WAYNE** tracked the packages sent to and from the victims.

20. It was further part of the conspiracy and scheme to defraud that **WAYNE** received numerous packages containing victim funds addressed to "Anthony Henry" at Walgreens stores in Maryland.

**Additional Information About Particular Victims**

21. It was further part of the conspiracy and scheme to defraud that beginning in or about February 2021, **WAYNE**, **DWAYNE**, and other conspirators caused false and fraudulent pretenses, representations, and promises to be made to A.K., including causing A.K. to believe the following:

    a. A.K. had won the lottery.

    b. To receive the winnings, A.K. was required to send funds to **WAYNE**, **DWAYNE**, and other conspirators by sending checks, through wire transfers, and by providing gift card information over the phone.

22. It was further part of the conspiracy and scheme to defraud that one of the gift cards A.K. had purchased was used to fund a PayPal account registered to **WAYNE**.

23. It was further part of the conspiracy and scheme to defraud that beginning in or about October 2020, **WAYNE, DWAYNE**, and other conspirators caused false and fraudulent pretenses, representations, and promises to be made to J.S., including causing J.S. to believe the following:

   a. J.S. had won the lottery.

   b. J.S. was required to send funds to pay taxes and other fees in connection with the winnings.

   c. J.S. was required to conceal the payments, for instance, by sending cash via FedEx inside a hollowed-out children's coloring book.

24. It was further part of the conspiracy and scheme to defraud that in or about September 2022 and March 2023, the conspirators caused J.S. to send packages via FedEx to **WAYNE** at Walgreens stores in Maryland, including a package that contained approximately $50,000 in United States currency.

25. It was further part of the conspiracy and scheme to defraud that the conspirators sent packages and caused packages to be sent that contained checks made payable to J.S. in the amount of $150 million, cell phones, and typewritten notes requesting that J.S. contact the writer at a telephone number ending in 9391 "to get in touch . . . about paying you the 150 million dollars."

26. It was further part of the conspiracy and scheme to defraud that on or about November 16, 2023, **DWAYNE** sent a package via UPS from the Staples store on Annapolis Road

in Lanham, Maryland to J.M. in North Carolina. The package contained a typewritten note referencing the same telephone number ending in 9391 as the typewritten notes sent to J.S.

27. It was further part of the conspiracy and scheme to defraud that **WAYNE** tracked multiple packages, including the following:

    a. the FedEx package sent by J.S. in or about March 2023, and

    b. multiple packages sent to J.S. in 2023 via USPS.

28. It was further part of the conspiracy and scheme to defraud that beginning in early 2023, **WAYNE**, **DWAYNE**, and other conspirators caused false and fraudulent pretenses, representations, and promises to be made to J.P., including causing J.P. to believe the following:

    a. J.P. had won $5.5 million in the lottery.

    b. J.P. received a metal briefcase containing partial payment of the lottery winnings and would receive a code to unlock the briefcase after J.P. had sent the required taxes and fees.

    c. If J.P. opened the briefcase without receiving the code, the money would be destroyed by an exploding ink pack inside the briefcase.

29. It was further part of the conspiracy and scheme to defraud that on or about July 14, 2023, **DWAYNE** sent a package via UPS from the Staples store on Annapolis Road in Lanham, Maryland to J.P. in Oregon.

**Information about Financial Transactions**

30. It was further part of the conspiracy and scheme to defraud that **WAYNE** opened a bank account ending in 3141 at Truist ("Truist 3141") and a bank account ending in 1382 at M&T ("M&T 1382"). **WAYNE** was the only signatory on the accounts.

31. It was further part of the conspiracy and scheme to defraud that Truist 3141 and M&T 1382 received money from the scheme to defraud, including in cash deposits and peer to peer transfers.

32. It was further part of the conspiracy and scheme to defraud that most of the ATM cash withdrawals from M&T 1382 occurred outside the United States.

33. It was further part of the conspiracy and scheme to defraud that from on or about November 10, 2020, to on or about October 26, 2023, **WAYNE** sent more than 30 payments to **DWAYNE** using Zelle.

34. It was further part of the conspiracy and scheme to defraud that from on or about October 24, 2020, to on or about October 31, 2023, **DWAYNE** sent more than 100 payments to **WAYNE** using Zelle.

35. It was further part of the conspiracy and scheme to defraud that the victims sent more than $3.5 million to the defendants and other conspirators based on false and fraudulent pretenses, representations, and promises involving false lottery or sweepstakes winnings.

18 U.S.C. § 1349

## COUNT TWO

(Mail Fraud)

1. Paragraphs 1 through 11 and paragraphs 14 through 35 of Count One are hereby realleged and incorporated by reference herein as though fully set forth in this Count of the Indictment.

2. On or about October 6, 2023, in the District of Maryland, the defendant,

**DWAYNE HENRY,**

for the purpose of executing or attempting to execute the scheme to defraud, did knowingly place or cause to be placed in an authorized depository for mail, to be sent and delivered by USPS, the following matter: a parcel addressed to J.S. containing a typewritten note with telephone number ending in 9391, and a check made payable to J.S. in the amount of $150 million.

18 U.S.C. § 1341
18 U.S.C. § 2

## COUNT THREE

### (Mail Fraud)

1. Paragraphs 1 through 11 and paragraphs 14 through 35 of Count One are hereby realleged and incorporated by reference herein as though fully set forth in this Count of the Indictment.

2. On or about November 16, 2023, in the District of Maryland, the defendant,

**DWAYNE HENRY,**

for the purpose of executing or attempting to execute the scheme to defraud, did knowingly send or cause to be sent and delivered by the United Parcel Service, the following matter: a parcel containing a typewritten note with telephone number ending in 9391 to J.M. in North Carolina.

18 U.S.C. § 1341
18 U.S.C. § 2

9

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further charges that:

### Fraud Forfeiture

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), in the event of the defendants' conviction under Counts One through Three of this Indictment.

2. As a result of the offenses charged in Counts One through Three, the defendants

**DWAYNE HENRY, and
WAYNE HENRY,**

shall forfeit to the United States any and all property, real or personal, which constitutes or is derived from proceeds traceable to such violations, and all interest and proceeds traceable thereto.

3. If, as a result of any act or omission of the defendants, any proceeds subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant.

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982
21 U.S.C. § 853(p)

28 U.S.C. § 2461(c)

*Erek L. Barron/w perm ELC*
Erek L. Barron
United States Attorney

**SIGNATURE REDACTED**
Foreperson

1/9/24
Date

11